# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# HARRISONBURG DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | Case No. 5:09CR00037 | |
| v. | ) | | |
| | ) | | |
| HECTOR BATISTA, | ) | | |
| | ) | By: | Michael F. Urbanski |
| Petitioner. | ) | | United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on the resentencing of criminal defendant Hector Batista. On May 12, 2017, the court granted Batista's motion to vacate his sentence pursuant to 28 U.S.C. § 2255, and ordered that his case be set down for resentencing on May 31. ECF Nos. 112, 113. In preparation, Batista and counsel for the United States each submitted sentencing memoranda. ECF Nos. 116, 117.

Batista has five felony convictions for first degree robbery under New York law. At the resentencing hearing, the government argued that the court should apply the 2016 version of the United States Sentencing Guidelines and find Batista to be a career offender pursuant to § 4B1.1. Batista disagreed, and argued that he should not be considered a career offender under any version of the Guidelines, and that to hold him a career offender under the 2016 Guidelines would violate the ex post facto protections of the United States Constitution. For the reasons that follow, the court utilizes the 2016 version of the United States Sentencing Guidelines to find that Batista is a career offender within the meaning of § 4B1.1.

**I.**

Section 4B1.1(a) of the 2016 United States Sentencing Guidelines (the "Guidelines") provides for an enhanced guideline range where "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Section 4B1.2 defines "crime of violence" as follows:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) Has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

Prior to 2016, however, § 4B1.2(a)(2) (emphasis added), provided a more expansive definition of "crime of violence," requiring only that the crime

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

This definition did not explicitly list murder, voluntary manslaughter, kidnapping, aggravated assault, forcible sex offenses, or, most pertinently, robbery. Instead, the pre-2016 version of § 4B1.2(a)(2) included the italicized text above, which is identical to the language in the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), declared unconstitutional by the Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II"[1]). The

---

[1] The court refers to the 2015 Johnson decision as "Johnson II" to distinguish it from the Supreme Court's earlier decision in Johnson v. United States, 559 U.S. 133 (2010) ("Johnson I"), concerning the force clause of § 924(e).

2

Court found that the italicized phrase, referred to as the "residual clause" of the ACCA, "denies fair notice to defendants and invites arbitrary enforcement by judges," thus violating the Constitution's prohibition on vague criminal laws. Johnson II, 135 S. Ct. at 2557. Moreover, the court later held that its Johnson II decision applied retroactively on collateral review, providing the vehicle by which Batista successfully challenged his sentence. Welch v. United States, 136 S. Ct. 1257 (2016).

If the Supreme Court's treatment of the residual clause in the ACCA in Johson II and Welch applied to the identical language in the Sentencing Guidelines, this court could not find Batista to be a career offender under § 4B1.2(a)(2) of the pre-2016 Guidelines because, in those versions, robbery is not enumerated.[2] However, in Beckles v. United States, the Supreme Court clarified that the reasoning behind the Johnson II decision did not apply in the context of the Sentencing Guidelines, which "merely guide the exercise of a court's discretion," rather than "fix[ing] the permissible range of sentences," like the ACCA. 137 S. Ct. 886, 892 (2017). "Accordingly," the Court held, "the [Sentencing] Guidelines are not subject to a vagueness challenge under the Due Process Clause. The residual clause in § 4B1.2(a)(2) therefore is not void for vagueness." Id.

Pursuant to Beckles, the Court of Appeals for the Fourth Circuit recently upheld a defendant's sentencing enhancement under the residual clause of § 4B1.2(a)(2). United States

---

[2] Nor would Batista's New York first-degree robbery convictions qualify him for career offender status under § 4B1.2(a)(1) (the "force clause" of the Guidelines). This court previously held that New York robbery, which need only involve a de minimis level of physical force, did not categorically fall within the ACCA's force clause, which, under Johnson I, requires "*violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. The force clause of the ACCA and § 4B1.2(a)(1) are identical, and the Court's opinion in Johnson I applies equally to the Guidelines. See United States v. Shell, 789 F.3d 335, 340 n.2 (4th Cir. 2015) (In considering § 4B1.2(a)(1), the court "rel[ied] . . . on cases construing the phrase 'violent felony' under the Armed Career Criminal Act, 'because the two terms have been defined in a manner that is substantively identical.'" (quoting United States v. Montes-Flores, 736 F.3d 357, 363 (4th Cir. 2013))).

3

v. Riley, 856 F.3d 326, 329 (4th Cir. 2017) ("Despite Johnson [II], then, the residual clause of the career offender guideline remains valid."); see United States v. Mack, 855 F.3d 581, 583 (4th Cir. 2017) ("Based on Beckles, we now reject Mack's vagueness challenge to § 4B1.2(a)."). In Riley, the court considered whether Maryland simple robbery—entailing "the carrying away of another's property 'from his person or in his presence . . . by violence or putting in fear'"— categorically falls within the residual clause of § 4B1.2(a)(2). 856 F.3d at 329 (ellipsis in original) (quoting Conyers v. State, 693 A.2d 781, 796 (Md. Ct. App. 1997)). The court relied on the commentary to § 4B1.2, which "expressly include[d] robbery in a list of offenses that qualify as crimes of violence. Id. (citing § 4B1.2, cmt. n. 1).

> These [listed] offenses "serve as additional enumerated offenses, or 'example crimes,' to be considered when determining whether a prior conviction" falls within the residual clause. United States v. Mobley, 687 F.3d 625, 629 (4th Cir. 2012); see also United States v. Peterson, 629 F.3d 432, 438 (4th Cir. 2011) ("[T]he commentary to § 4B1.2(a)(2) adds to the list of example crimes listed in § 4B1.2(a)(2) an additional six crimes of violence under the Guidelines . . . ."). Robbery, then, is a paradigmatic example of a crime presenting "a serious potential risk of physical injury to another." It plainly constitutes a crime of violence under the residual clause.

Id.

The court concludes, under Riley and Beckles, that Batista's prior convictions for New York first degree robbery would qualify him for career offender treatment under the pre-2016 version of § 4B1.2(a). Every degree of New York robbery requires a person "forcibly steal[]" property, defined under New York law as "us[ing] or threaten[ing] the immediate use of physical force." N.Y. Penal Law § 160.00. New York courts have interpreted § 160.00 to only require proof of de minimis force, which this court concluded

4

does not rise to the level of ACCA force articulated in Johnson I. See generally ECF No. 112. However, the de minimis force necessary to be convicted of New York robbery is sufficient to satisfy the residual clause of § 4B1.2. Stealing property with even slight force opens up the possibility of further, escalated conflict, and thus "undoubtedly 'presents a serious potential risk of physical injury to another.'" Riley, 856 F.3d at 329 (citing § 4B1.2). The commentary's inclusion of robbery in a list of qualifying crimes of violence only strengthens this conclusion. See § 4B1.2, cmt. n. 1. Were the court to use the 2008 or 2009 guidelines,[3] it would determine Batista to be a career offender under the residual clause of § 4B1.2(a)(2).[4]

---

[3] The government argues that, if the court does not use the 2016 Guidelines, it should use the version from 2008, because that version was "in effect on the date that the offense of conviction was committed." Sentencing Guidelines § 1B1.11(b)(1); ECF No. 124, at 3 n.1. Batista argues instead for the 2009 version of the Guidelines. This issue need not be addressed. The court concludes that the 2016 Guidelines apply, and, in any event, the 2008 and 2009 versions of the Guidelines do not differ in any way relevant to this analysis.

[4] Batista argues that the "law of the case" doctrine forecloses the court from declaring him a career offender under the 2009 Guidelines, because the court did not do so at his original sentencing. ECF No. 123, at 6–7; see United States v. Agyepong, No. 09-4643, 2010 WL 2852653, at *3 (4th Cir. July 21, 2010). "As most commonly defined, the [law of the case] doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (2011). Nonetheless, Batista is incorrect in arguing that the law of the case doctrine restrains the court from revisiting its earlier analysis of his career offender status. After granting Batista's § 2255 petition, the court vacated Batista's original sentence and set this matter down for resentencing, ECF No. 113, effectively "wip[ing] the slate clean." Pepper v. United States, 562 U.S. 476, 507 (2011). Batista acknowledged as much in his sentencing memorandum. ECF No. 117, at 2 ("[A]fter a defendant is successful on a § 2255 petition, he is entitled to a *de novo* resentencing.").

> "A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." United States v. Stinson, 97 F.3d 466, 469 (C.A.11 1996) (per curiam). Because a district court's "original sentencing intent may be undermined by altering one portion of the calculus," United States v. White, 406 F.3d 827, 832 (C.A.7 2005), an appellate court when reversing one part of a defendant's sentence "may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. § 3553(a).

Pepper, 562 U.S. at 507 (ellipses in original). Johnson II altered one portion of Batista's sentencing calculus. Accordingly, the court reviews Batista's sentence in its entirety. To allow the law of the case doctrine, which "directs a court's discretion, [but] does not limit the tribunal's power," Arizona, 460 U.S. at 618, to bind the court's hands as to Batista's career offender status would effectively require the court to sanction one error in Batista's original sentencing while simultaneously rectifying another. The court will not embark on this contradictory path. See Agostini v. Felton, 521 U.S. 203, 236 (1997) (The law of the case doctrine "does not apply if the court is convinced that its prior decision is clearly erroneous and would work a manifest injustice." (internal quotation marks and brackets omitted) (quoting Arizona, 460 U.S. at 618 n.8)).

## II.

At this point the court must determine what version of the Guidelines to apply at Batista's resentencing. Section 1B1.11 provides that, ordinarily, "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." However,

> [i]f the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.

§ 1B1.11(b)(1). "The ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; *or imposes additional punishment to that then prescribed.*'" Weaver v. Graham, 450 U.S. 24, 29 (1981) (emphasis added) (quoting Cummings v. Missouri, 4 Wall. 277, 325–26 (1867)). Thus, the court could permissibly apply the 2016 Guidelines to find Batista a career offender only if he would have also so qualified under the version of the Guidelines in effect at the time he committed the offense. Batista recognizes as much, and argues that he should not be considered a career offender under pre-2016 Guidelines, and that therefore the 2016 Guidelines cannot be used if the court concluded that the changed language of § 4B1.2(a) would qualify Batista for career offender treatment.

This argument may safely be rejected, because, as discussed supra pp. 2–5, Batista's New York robbery convictions would have qualified him as a career offender under both the 2008 and 2009 versions of § 4B1.2(a). Thus, the 2016 version of the Guidelines may be used without running afoul of the ex post facto clause of the Constitution. In accordance with § 1B1.11(a), the court will do so.

## III.

The sole remaining question is whether, under the 2016 version of the Guidelines, Batista's prior convictions for New York first-degree robbery subject him to the enhanced Guidelines range applicable to a career offender. The 2016 version of § 4B1.2(a)(2) does not contain a "residual clause," but, unlike prior versions of that section, includes robbery as an enumerated offense. The relevant inquiry is whether New York robbery qualifies as robbery within the meaning of the 2016 version of § 4B1.2(a)(2)'s list of enumerated offenses. To answer this question, the court must first "distill a 'generic' definition of [robbery] based on how the offense is defined 'in the criminal code of most states.'" United States v. Peterson, 629 F.3d 432, 436 (4th Cir. 2011). Second, the "court must determine whether the defendant's prior conviction constituted a conviction of the generic offense." Id. "That determination is made categorically, not by comparing the defendant's prior *conduct* with the generic offense, but rather by comparing the *elements* of the crime of conviction with the generic offense." Id.

Batista argues that "New York robbery is broader than the generic robbery offense encapsulated by the career offender guideline and for this reason, Batista is not a career offender." ECF No. 117, at 4. In support, Batista suggests that the court look to the Model Penal Code's definition of robbery:

> [T]he [Model Penal] Code provides that a person: "is guilty of robbery if, in the course of committing a theft, he: (a) inflicts serious bodily injury upon another; or (b) threatens another with or purposely puts put [sic] him in fear of immediate serious bodily injury; or (c) commits or threatens immediately to commit any felony of the first or second degree."

7

Id. at 5 (quoting Model Penal Code § 222.1). Because New York robbery requires only de minimis force, rather than "serious bodily injury," it falls outside the Model Penal Code's definition, and therefore, Batista argues, should not be considered "robbery" within the meaning of the Sentencing Guidelines. Id. at 6.

The government, on the other hand, argues that the court should ascertain the generic definition of robbery not from the Model Penal Code, but from the various state definitions of robbery, the majority of which are "substantially the same" as the New York robbery statute. ECF No. 124, at 14 (citing United States v. Lockley, 632 F.3d 1238, 1243–44 (11th Cir. 2011) ("find[ing] the generic definition of robbery to be 'the taking of property from another person or from the immediate presence of another person by force *or* intimidation'")). Under Taylor v. United States, if New York robbery adopts "the generic definition with minor variations in terminology, then the trial court need find only that the state statute corresponds in substance to the generic meaning." 495 U.S. 575, 599 (1990) (comparing Missouri burglary to "generic" common-law burglary).

The court agrees with the government. The Fourth Circuit Court of Appeals relied on the Model Penal Code in United States v. Peterson to define generic manslaughter because "state criminal law . . . yield[ed] material variations," in states' definitions of manslaughter, and the Model Penal Code definition "ha[d] been widely adopted." 629 F.3d 432, 436 (4th Cir. 2011). State robbery statutes, however, are more homogenous, and courts around the country recognize that the majority definition of robbery requires force or threat of force. United States v. Lockley, 632 F.3d 1238, 1243 (11th Cir. 2011); see United States v. Walker, 595 F.3d 441, 446 (2d Cir. 2010); United States v. Garcia-Caraveo, 586 F.3d 1230,

8

1235 (10th Cir. 2009); United States v. Santiesteban-Hernandez, 469 F.3d 376, 380 (5th Cir. 2006), abrogated on other grounds by United States v. Rodriguez, 711 F.3d 541 (5th Cir. 2013); United States v. Savage, Nos. LA CR 08-00258-VBF, LA CV 16-03864-VGF, 2017 WL 130008, at *36 (C.D. Cal. Jan. 12, 2017); United States v. Graves, No. 1:15-CR-158-001, 2016 WL 5934205, at *8 (M.D. Penn. Oct. 12, 2016); United States v. O'Conner, No. 15-20079-01-JAR, 2016 WL 42373199, at *4 (D. Kan. Aug. 15, 2016); United States v. Williams, No. 5:15-CR-31-BO, 2016 WL 1451533, at *2 (E.D.N.C. Apr. 12, 2016); United States v. Hinton, No. 4:15-CR-26-FL, 2016 WL 632447, at *3 (E.D.N.C. Feb. 17, 2016). But see United States v. Litzy, 137 F. Supp. 3d 920 (S.D.W.V. 2015).[5] Furthermore, unlike the Model Penal Code's articulation of manslaughter, only "a small minority of states" has adopted the Model Penal Code's requirement of bodily injury or physical harm. Lockley, 632 F.3d 1238. Both these factors convince the court that, in "distill[ing] the 'generic' definition of" robbery, Peterson, 629 F.3d at 436, the Model Penal Code is less persuasive than the uniform practice of a majority of states.

---

[5] The court in Litzy relied on the Model Penal Code to find that generic robbery requires bodily injury or physical harm, and ruled Ohio's robbery statute categorically overbroad. The court held that "[t]he conduct that constitutes 'robbery' varies greatly from state to state; this is illustrated [by] Ohio's unique definition of force under Ohio's robbery law." Id. at 934. Other than noting Ohio's idiosyncrasy in this regard, the Litzy court did not elucidate the great variance it found in state robbery statutes. This court is more convinced by the wealth of other case law finding relative unanimity in state articulations of robbery. E.g., Hinton, 2016 WL 632447, at *3 ("[T]he majority of states, including North Carolina, adhere to" a definition of robbery requiring that "the taking is accomplished by means of force or putting in fear.").

Moreover, the Litzy court interpreted a pre-2016 version of the Guidelines, which did not include robbery as an enumerated offense in the actual text of the Guidelines, but rather only in the commentary. The court noted that
> [t]he Fourth Circuit has held that the Guidelines commentary must be read in light of its text, and that offenses enumerated in the commentary must be tied to either clause of § 4B1.2(a). Therefore, although robbery is enumerated in the commentary, a . . . robbery conviction must still meet the requirements for either clause of § 4B1.2(a). However, as discussed above, neither § 4B1.1(a)'s force clause nor its residual clause can support finding an Ohio robbery conviction is a crime of violence.

137 F. Supp. 3d at 935. This court need not rely on the force clause or the residual clause, because robbery is now enumerated separately in § 4B1.2(a)(2).

9

Nor does this court's conclusion that New York robbery is overbroad for purposes of the force clause of the ACCA change this conclusion. The argument that New York robbery does not qualify as generic robbery as enumerated in § 4B1.2(a)(2) because it fails to require Johnson I-level force conflates the enumerated clause analysis with the force clause analysis. See Santiesteban-Hernandez, 469 F.3d 376, 381 n.7 ("The Model Penal Code's requirement of serious injury is not dispositive because generic robbery does not require serious bodily injury."); Hinton, 2016 WL 632447, at *3 ("Although North Carolina's offense of common law robbery does not fall under the 'use of force' clause, it categorically corresponds to the 'generic' definition of the crime of 'robbery' . . . ."); Williams, 2016 WL 1451533, at *2 (same). Batista himself concedes that "most states do not specify by statute the degree of force required for the offense." ECF No. 117, at 5. Given that this court has just concluded that the generic definition of robbery should be drawn from the definition applied by a majority of states, it would be inconsistent to impose a heightened force requirement—like that imposed by Johnson I in relation to the force clause of the ACCA— for purposes of the felonies enumerated in § 4B1.2(a)(2) of the Guidelines.

After recognizing that generic robbery need only involve "force or intimidation," Lockley, 632 F.3d at 1244, it is clear that Batista's New York robbery convictions fall categorically within the Guidelines' generic definition. All New York robberies, including first degree robbery, involve the "use[] or threaten[ed] . . .use of physical force upon another person." N.Y. Penal Law § 160.00. This force requirement is essentially "the generic definition with minor variations in terminology." Taylor, 495 U.S. at 599. Thus, the court concludes that New York robbery falls categorically within the generic definition of robbery

10

articulated in the enumerated clause of § 4B1.2(a)(2) of the 2016 Sentencing Guidelines. Accordingly, Batista's five convictions for New York first degree robbery qualify him for career offender treatment under § 4B1.1.

### IV.

For the foregoing reasons, the court concludes that utilizing the 2016 Sentencing Guidelines does not violate the Constitution's prohibition on the ex post facto application of law. Accordingly, the court uses the 2016 Guidelines and finds that Batista is a career offender under §4B1.1. An appropriate **ORDER** will be entered.

Entered: June 19, 2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge