CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 3 0 2017
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 5:09CR00037 |
| v. | ) | |
| | ) | |
| HECTOR BATISTA, | ) | |
| | ) | By: Michael F. Urbanski |
| Petitioner. | ) | United States District Judge |

## AMENDED MEMORANDUM OPINION

Petitioner Hector Batista brings this habeas corpus petition pursuant to 28 U.S.C. § 2255, asking the court to vacate or correct his sentence in light of the United States Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015). ECF No. 92. The government moved to dismiss Batista's § 2255 motion, ECF No. 101, and Batista responded. ECF No. 105. For the reasons that follow, the court will **GRANT** Batista's § 2255 petition and **DENY** the United States' motion to dismiss.[1]

I.

On May 6, 2010, a criminal judgment was entered sentencing Batista to a term of 160 months of incarceration for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1).[2] ECF No. 79. Because the court determined that Batista had three or more qualifying convictions under the Armed Career Criminal Act (the "ACCA"), his mandatory minimum sentence was higher than the 120-month maximum sentence otherwise authorized under § 924(a)(2). Batista also was convicted of conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 846 & 841(b)(1)(B), and sentenced to a concurrent term of 160 months.

---

[1] This case will be set down for resentencing.
[2] United States District Judge Samuel G. Wilson presided over Batista's sentencing. Judge Wilson has since retired and the instant § 2255 motion was assigned to the undersigned United States District Judge.

The criminal judgment accepted the factual findings in the Presentence Investigation Report ("PSR"), which found Batista to be subject to the enhanced penalty under § 924(e) based on convictions listed in PSR paragraphs 26–32, consisting of a 1986 conviction for New York reckless endangerment,[3] five convictions for New York first degree robbery in 1990 and 1991, and a 1990 attempted murder conviction. ECF No. 83. Batista did not object to the presentence report, and did not appeal his conviction.

On April 8, 2016, Batista filed a motion to vacate his sentence under 28 U.S.C. § 2255. ECF No. 92. The government subsequently filed a motion to dismiss. ECF No. 101.

## II.

Under 28 U.S.C. § 2255, a federal inmate may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. Courts may afford relief where "the sentence was imposed in violation of the Constitution or the laws of the United States." Id. § 2255(a). If the court determines the sentence was unlawfully imposed, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Id. § 2255(b).

A convicted felon found guilty of possessing a firearm faces a maximum sentence of 120 months. 18 U.S.C. § 924(a)(2). However, the ACCA provides for a mandatory minimum sentence of 180 months when a defendant was previously convicted of at least three prior serious drug offenses or violent felonies. Id. § 924(e)(1). A violent felony is defined as:

---

[3] Paragraph 25 of the PSR discloses a separate 1986 reckless endangerment conviction, which at the time of sentencing would have also qualified as an ACCA predicate. However, the government now concedes, correctly, that Batista's reckless endangerment convictions no longer qualify as violent felonies for the purposes of the ACCA. ECF No. 101, at 1 n.1, 4; see United States v. Gray, 535 F.3d 128, 131–32 (2d Cir. 2008) (holding, under Begay v. United States, 553 U.S. 137 (2008), that New York reckless endangerment is not a violent felony). Accordingly, the court need not address Batista's reckless endangerment convictions.

2

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that –
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, ~~or otherwise involves conduct that presents a serious potential risk of physical injury to another~~. . . .

Id. § 924(e)(2)(B) (strikeout added).

In 2015, the Supreme Court invalidated the language stricken above after finding it void for vagueness. Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II").[4] Though often parsed into three clauses—the force clause, the enumerated clause, and the residual clause—§ 924(e)(2)(B) is comprised of two numbered subsections. See Begay v. United States, 553 U.S. 137, 142–44 (2008). Specifically, the first subsection states:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

18 U.S.C. § 924(e)(2)(B)(i) ("Subsection (i)"). The second subsection states:

> (ii) is burglary, arson, or extortion, involves use of explosives, ~~or otherwise involves conduct that presents a serious potential risk of physical injury to another~~. . . .

18 U.S.C. § 924(e)(2)(B)(ii) ("Subsection (ii)"). Subsection (ii) lists several specific "enumerated offense" crimes—burglary, arson, extortion, and use of explosives—that amount to violent felonies. The residual clause of subsection (ii) goes on to encompass any crime that "otherwise involves conduct that presents a serious potential risk of injury."

Batista's qualifying convictions, for New York first degree robbery and attempted murder, do not implicate the enumerated clause. Moreover, as the government notes,

---

[4] The court refers to the 2015 Johnson decision as "Johnson II" to distinguish it from the Supreme Court's earlier decision in Johnson v. United States, 559 U.S. 133 (2010) ("Johnson I"), concerning the force clause of § 924(e).

3

because Batista has five first degree robbery convictions, the court need not address his attempted murder conviction. His entitlement to relief will be determined by whether New York robbery remains an ACCA predicate. Thus, the sole question in this case following Johnson II is whether violations of New York's first degree robbery statute, N.Y. Penal Law § 160.15, fall within 18 U.S.C. § 924(e)(2)(B)(i)—the force clause of the ACCA.[5]

### III.

On the merits, the government first acknowledges, under United States v. Jones, No. 15-1518-cr, 2016 WL 3923838 (2d Cir. July 21, 2016),[6] that New York first degree robbery is not categorically a violent felony. However, the government argues that the statute is divisible, allowing the court to consider under which subsection Batista was convicted. Because Batista has presented no records of his prior convictions to the court, the court cannot determine which subsection Batista was sentenced under; therefore, the government contends that he has failed to meet his burden of showing that he is entitled to relief. ECF No. 101, at 13.

In response, Batista argues that physical force is not a necessary element of New York robbery, rendering the ACCA inapplicable. Batista acknowledges that "[e]very degree of New York robbery begins with the requirement that a person 'forcibly steal[]' property which is defined under N.Y. Penal Law § 160.00 to require 'us[ing] or threaten[ing] the immediate use of physical force.'" ECF No. 92, at 5 (brackets in original). However, Batista

---

[5] The government also argues Batista's claim is procedurally barred. That argument is now foreclosed by the Fourth Circuit's recent opinion in United States v. Winston, 850 F.3d 677 (4th Cir. 2017).
[6] The Court of Appeals for the Second Circuit withdrew its opinion in Jones, pending the Supreme Court's decision in Beckles v. United States, 137 S. Ct. 886 (2017). See United States v. Jones, 838 F. 3d 296 (2d Cir. Oct. 3, 2016) (order withdrawing opinion on the merits); ECF No. 102. As such, the court must decide this issue without the aid of the Second Circuit's reasoning in Jones.

4

argues that the New York law requires proof of only slight force, encompassing conduct far below the ACCA's threshold of violent force. Johnson I, 559 U.S. at 140 ("We think it clear that in the context of a statutory definition of '*violent* felony,' the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person.").

### A.

Batista's argument has been adopted by the Fourth Circuit Court of Appeals in recent months in similar cases involving application of the force clause of the ACCA to the crime of robbery under North Carolina and Virginia law.

In United States v. Gardner, 823 F.3d 793, 802 (4th Cir. 2016), the court vacated petitioner's ACCA enhanced sentence, finding that his prior North Carolina robbery convictions did not satisfy the ACCA's rigorous physical force test. Employing the categorical approach, the court weighed the minimum culpable level of force necessary for a North Carolina robbery violation with the level of physical force required to meet the ACCA under Johnson I. After examining North Carolina decisions, the court

> conclude[d] that the minimum conduct necessary to sustain a conviction for North Carolina common law robbery does not necessarily include the use, attempted use, or threatened use of "force capable of causing physical pain or injury to another person," as required by the force clause of the ACCA. Johnson [I], 559 U.S. at 140. Therefore, we hold that North Carolina common law robbery does not qualify categorically as a "violent felony" under the ACCA.

Gardner, 823 F.3d at 804 (parallel citation omitted).

In United States v. Winston, 850 F.3d 677 (4th Cir. 2017), the Fourth Circuit reached the same conclusion concerning Virginia common law robbery, again applying Johnson I.

5

> The Supreme Court's holding in Johnson I settled competing views of federal courts regarding the amount of force required to qualify as the use or threatened use of "physical force" under the ACCA's force clause. Indeed, after Johnson I, certain crimes that courts previously had determined were violent felonies no longer met the newly defined requirements of the force clause as felonies necessarily entailing the use of "violent force" capable of causing pain or injury.

Id. at 684. (citation omitted).

Applying the categorical approach, the Fourth Circuit then looked to state law to ascertain the "minimum conduct criminalized by state law, including any conduct giving rise to a realistic probability, not a theoretical possibility that a state would apply the law and uphold a conviction based on such conduct." Id. (citation and internal quotations omitted). As the court explained, "Virginia common law robbery can be committed by violence or by intimidation. Thus, if either means of committing this crime does not require the 'use, attempted use, or threatened use' of 'physical force,' then Virginia robbery does not categorically match the force clause of the ACCA." Id. Looking to Virginia law, the Fourth Circuit determined that "Virginia common law robbery can be committed when a defendant uses only a 'slight' degree of force that need not harm a victim." Id. at 685. As such, "Virginia common law robbery appears to encompass a range of de minimis contact by a defendant." Id. The court concluded:

> Based on the above decisions from the appellate courts in Virginia, we conclude that the minimum conduct necessary to sustain a conviction for Virginia common law robbery does not necessarily include the use, attempted use, or threatened use of "violent force . . . capable of causing physical pain or injury to another person," under Johnson I. Accordingly, we hold that Winston's conviction for Virginia common law robbery does not qualify as a violent felony under the ACCA.

Id. (citation omitted)

## B.

In both Gardner and Winston, the court employed the "categorical approach" in determining whether a previous conviction qualified as a violent felony under the ACCA. Such an approach considers "only the conviction itself and the elements of the offense, not the particular facts of the crime." Gardner, 823 F.3d at 802.

In Batista's case, five of his six ACCA qualifying convictions were for New York first degree robbery. At the time of his convictions in 1990 and 1991, the New York first degree robbery statute read as follows:

> A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime:
> 1. Causes serious physical injury to any person who is not a participant in the crime; or
> 2. Is armed with a deadly weapon; or
> 3. Uses or threatens the immediate use of a dangerous instrument; or
> 4. Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . .

N.Y. Penal Code § 160.15.

In a narrow range of cases, when a crime is divisible, the court is permitted to employ the "modified categorical approach" to determine the basis of a defendant's conviction. See Descamps v. United States, 133 S. Ct. 2276, 2283-85 (2013). Gardner teaches that:

> A crime is divisible when it includes multiple "alternative elements" that create different versions of the crime, at least one of which would qualify under the federal definition and at least one of which would not.

7

> A crime is not divisible simply because it may be accomplished
> through alternative means, but only when alternative elements
> create distinct crimes. Alternative elements of a crime, as
> opposed to alternative means of committing a crime, are factual
> circumstances of the offense that the jury must find
> unanimously and beyond a reasonable doubt. Therefore, when
> determining the divisibility of a crime, we may consider how
> courts generally instruct juries with respect to that offense.

Gardner, 823 F.3d at 802 (citation and internal quotations omitted).

Following Gardner's lead, the court looks to New York jury instructions to assess divisibility. Sections 69:2–5 of Charges to the Jury and Requests to Charge in a Criminal Case in New York (hereinafter "New York Jury Instructions") provide separate instructions for each subsection of N.Y. Penal Code § 160.15. Thus, § 69:2 corresponds to an alleged violation of N.Y. Penal Code § 160.15(1)—a first degree robbery in which "serious physical injury" was caused. Likewise, §§ 69:3, 69:4, and 69:5 correspond to N.Y. Penal Code §§ 160.15(2) ("Is armed with a deadly weapon"), (3) ("Uses or threatens the immediate use of a dangerous instrument"), and (4) ("Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . ."), respectively. This alone suggests that subsections (1)–(4) of N.Y. Penal Code § 160.15 list elements, rather than means; if New York juries were not required to agree on which subsection was violated, there would presumably be only one model jury instruction for first degree robbery, with the four subsections listed in the disjunctive. See, e.g., Georgia Suggested Pattern Jury Instructions, Volume II, Criminal Cases § 2.60.10 (listing, as the third element of Georgia robbery, that the statute was violated "by force, by intimidation, by the use of threat or coercion, by placing such person or another in fear of immediate serious bodily injury to himself/herself or another, or by sudden snatching"). Even more compelling, §§ 69:2–5 each list *as an element*

8

violation of the corresponding § 160.15 subsection. E.g., New York Jury Instructions § 69:2 (listing as the sixth element, "[t]hat in the course of the commission of the crime or of immediate flight therefrom, the defendant, *[name of defendant]*, or another participant in the crime, caused serious physical injury to any person who was not a participant in the crime" (second brackets and italics in original)).

Thus, the court concludes that subsections (1)–(4) of N.Y. Penal Code § 160.15 list alternative elements, rather than means. As such, the court would be permitted to apply the modified categorical approach, and examine those state court records approved by the Supreme Court in Shepard v. United States, 544 U.S. 13 (2005). Unfortunately, the court cannot undertake this examination, because the record does not include any state court documents pertaining to Batista's New York first degree robbery convictions.[7]

The government argues that this failure to produce records dooms Batista's claims, based on the general rule that, in habeas proceedings, the petitioner bears the burden of demonstrating that he is entitled to relief. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965). This argument misses the mark. "The modified [categorical] approach . . . acts not as an exception [to the categorical approach], but instead as a tool." Descamps v. United States, 133 S. Ct. 2276, 2285 (2013). "It helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction." Id. at 2283. Where, as here, the "tool" of the modified categorical approach is unhelpful, the solution is not to refrain from analysis entirely. Rather, the court must simply continue its analysis under the categorical approach.

---

[7] Batista contends that he was "unable to produce Shepard documents for his . . . five first degree robbery convitions because there was a fire at the warehouse that stored the court's documents." ECF No. 105, at 15.

9

See United States v. Torres-Miguel, 701 F.3d 165, 167 (4th Cir. 2012) ("We note that even if § 422(a) contained 'divisible categories of proscribed conduct,' [United States v.] Gomez, 690 F.3d [194,] 199 [4th Cir. 2012], we could not apply the modified categorical approach here because the record contains no charging document, plea agreement, or other document approved in Shepard."); cf. Winston, 850 F.3d at 682 ("'[N]othing in the law requires a [court] to specify which clause . . . it relied upon in imposing a sentence.' We will not penalize a movant for a court's discretionary choice not to specify under which clause of Section 924(e)(2)(B) an offense qualified as a violent felony." (second brackets and ellipsis in original) (citing In re Chance, 831 F.3d 1335, 1340 (11th Cir. 2016))).

In such a situation, "[b]ecause this [c]ourt examines what the state conviction necessarily involved and not the facts underlying the case, it presumes that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, before determining whether even those acts are encompassed by the generic federal offense." Moncrieffe v. Holder, 133 S. Ct. 1678, 1680 (2013) (third and fourth brackets in original) (quoting Johnson I, 559 U.S. 133, 137 (2010)). As such, the question before the court is whether violation of N.Y. Penal Code § 160.15(2) ("forcibly steal[ing]" property while "armed with a deadly weapon") qualifies as an ACCA predicate under the force clause.

### C.

In making this determination, the court is bound by the decisions of New York's highest state court, the New York Court of Appeals. See Johnson I, 559 U.S. at 138. Moreover, absent a ruling by the New York Court of Appeals, the decisions of New York's lower state courts are "helpful indicators" for ascertaining how the Court of Appeals would

rule. Michalski v. Home Depot, Inc., 225 F.3d 113, 116 (2d Cir. 2000). These state court decisions make clear that "forcible steal[ing]" alone does not rise to the level of "force capable of causing physical pain or injury to another" required by Johnson I. Id. at 140.

New York precedent is replete with convictions for "forcible stealing" that do not involve Johnson I force.[8] In People v. Lee, 197 A.D.2d 378, 378 (N.Y. App. Div. 1993), evidence that the "[d]efendant bumped his unidentified victim, took money, and fled while another forcibly blocked the victim's pursuit" was held sufficient to support a conviction for second degree robbery. The same was true of evidence that a "store clerk grabbed the hand in which defendant was holding the money and the two tugged at each other until defendant's hand slipped out of the glove holding the money." People v. Safon, 166 A.D.2d 892, 893 (N.Y. App. Div. 1990). Most convincingly, the requisite force to sustain a robbery conviction was established where the defendant "and three others formed [a] human wall that blocked victim's path as victim attempted to pursue someone who had picked his pocket." People v. Bennett, 219 A.D.2d 570, 570 (N.Y. App. Div. 1995); see People v. Patton, 184 A.D.2d 483 (N.Y. App. Div. 1992) (conviction sustained for blocking victim's pursuit). The Bennett court held that the "requirement that robbery involve [the] use, or threat of immediate use, of physical force does not mean that [a] weapon must be used or displayed or that [the] victim must be physically injured *or touched*." A.D.2d at 570 (emphasis added). If "forcible steal[ing]" can take place without any physical contact, it seems clear that

---

[8] These decisions involve second or third degree robbery, rather than the first degree robberies of which Batista was convicted. This discrepancy is immaterial to the meaning of "forcible steal[ing]" because all degrees of robbery in New York contain the same force requirement. See N.Y. Penal law § 160.00 (describing the force required for robbery in general). Instead, degrees of New York robbery are distinguished by other aggravating factors. The relevant aggravating factor in this case—N.Y. Penal Law § 160.15(2)'s prohibition on robbery "while armed with a deadly weapon"—is discussed infra pp. 15–16.

11

the force necessary to establish a New York robbery conviction does not rise to Johnson I's level. See also People v. Brown, 243 A.D.2d 363 (N.Y. App. Div. 1997) (conviction sustained where defendant attempted to push victim).

The court is mindful of decisions that take the opposite view. Before the Supreme Court's decision in Johnson I, the Court of Appeals for the Second Circuit twice held New York robbery was categorically a violent felony. United States v. Brown, 52 F.3d 415 (2d Cir. 1995); United States v. Spencer, 955 F. 2d 814 (2d Cir. 1992). Both decisions merely noted the fact that a violent felony involves the use of physical force, and N.Y. Penal Code § 160.00 defines robbery as "forcible steal[ing]." Brown, 52 F.3d at 425–26; Spencer, 955 F. 2d at 820. These decisions could not foresee the Court's ruling in Johnson I, and therefore had no reason to conclude that force necessary to constitute a "violent felony" was more violent than the minimal force sufficient to satisfy N.Y. Penal Code § 160.00.

After Johnson I, the Second Circuit nonetheless affirmed the reasoning of Brown and Spencer. These opinions did not undertake an analysis of the issue, and declined to consider the Court's holding in Johnson I. United States v. Miles, 748 F.3d 485 (2d Cir. 2014); United States v. Kornegay, 641 F. App'x 79 (2d Cir. 2016) (summary order); United States v. Shannon, 604 F. App'x 11 (2d Cir. 2015) (summary order); United States v. Bogle, 522 F. App'x 15 (2d Cir. 2013) (summary order). The one exception was Belk v. United States, a case in which the Second Circuit, by unreported opinion, denied a petitioner leave to file a successive § 2255 motion on procedural grounds. No. 16-765, 2016 WL 1587223 (2d Cir. Apr. 19, 2016). The court noted the petitioner's invocation of Johnson I, before holding that

> [t]his case, however, concerned the interpretation of the ACCA and did not announce a new rule of constitutional law.

12

> Additionally, there is nothing in the 2015 Johnson [II] decision, or the procedural history of Petitioner's case, that permits him to now raise a claim under the 2010 Johnson [I] case. Consequently, it cannot serve as the basis for Petitioner's motion. See 28 U.S.C. § 2255(h)(2).

Id. at *1. Decisions of Courts of Appeals other than the Fourth Circuit are not binding on this court, and must give way where they conflict with Fourth Circuit precedent. Here, the Belk decision is at odds with the Fourth Circuit's decision in Winston, which rejected a procedural challenge to a petitioner's ACCA argument under Johnson I, holding that the petitioner "sufficiently has shown that he relied on a new rule of constitutional law." 850 F.3d at 679. Winston teaches that, in the Fourth Circuit, Johnson II's retroactive negation of the residual clause of the ACCA permits a petitioner to advance Johnson I arguments against application of the force clause. This court is required to follow that precedent.

Six months after Belk, the Second Circuit, citing Johnson I, reversed itself, and held that a violation of N.Y. Penal Code § 160.15(2) is not categorically a violent felony. United States v. Jones, No. 15-1518-cr, 2016 WL 3923838 (2d Cir. July 21, 2016). Directly after, district courts in the Second Circuit relied on Jones and followed suit. Diaz v. United States, Nos. 1:16-cv-0323-MAT, 1:11-cr-0381 (MAT), 2016 WL 4524785 (W.D.N.Y. Aug. 30, 2016); Miles v. United States, Nos. 11 Cr. 581, 15 Civ. 8255, 2016 WL 4367958 (S.D.N.Y. Aug. 15, 2016); Laster v. United States, Nos. 06 Cr. 1064, 16 Civ. 3285, 2016 WL 4094910 (S.D.N.Y. Aug. 2, 2016). However, the Second Circuit vacated the Jones opinion, 838 F. 3d 296 (2d Cir. Oct. 3, 2016) (order vacating opinion), in anticipation of the Court's decision in Beckles v. United States, 137 S. Ct. 886 (2017) (declining to strike down the residual clause of Federal Sentencing Guidelines § 4B1.2(a)). Accordingly, district courts within the Second

13

Circuit have concluded that they remain constrained by the Second Circuit's pre-Jones reasoning, despite one court's acknowledgement that Johnson I "casts some doubt on the continuing validity of Brown and similar cases." Rainey v. United States, No. 14-CR-197 (JMF), 2017 WL 507294, at *3 (S.D.N.Y. Feb. 7, 2017); see Boone v. United States, Nos. 02-CR-1185 (JMF), 13-CV-8603 (JMF), 2017 WL 398386 (S.D.N.Y. Jan. 30, 2017); Stuckey v. United States, Nos. 16-CV-1787 (JPO), 06-CR-337 (BSJ), 2016 WL 7107419 (S.D.N.Y. Dec. 1, 2016). Courts from outside the circuit have also deferred to the Second Circuit on this issue, while nonetheless noting Jones' persuasive reasoning. United States v. Perez, No. 1:14CR312, 2017 WL 1328274 (N.D. Ohio Apr. 11, 2017); Bowles v. United States, No. 1:04-170, 2017 WL 770531 (D.S.C. Feb. 28, 2017); United States v. Nieves-Galarza, No. 1:11-CR-057, 2017 WL 85542 (M.D. Penn. Jan. 10, 2017); see also Primus v. United States, Nos. 3:16-CV-90, 3:12-CR-24 (GROH), 2017 WL 88990 (N.D.W.V. Jan. 10, 2017).

On the other hand, several Second Circuit district courts declined to follow Brown, Spencer, and their progeny, and agreed with this court that New York robbery is not categorically a violent felony. E.g., United States v. Moncrieffe, 167 F. Supp. 3d 383, 405 (E.D.N.Y. 2016) (declining to follow Second Circuit, post-Johnson I "summary orders, which are not binding"); Thrower v. United States, No. 04-CR-0903 (ARR), 2017 WL 1102871, at *9 (E.D.N.Y. Feb. 13, 2017) ("The government correctly notes that, before 2010, the Second Circuit held in binding, published decisions that robbery is a violent felony under the force clause. However, [Johnson I] changes this analysis."); United States v. Johnson, No. 15-CR-32 (BMC), 2016 WL 6684211 (E.D.N.Y. Nov. 12, 2016) ("[A]ll of the cases upon which the [g]overnment relies were either decided prior to Johnson I, or are non-

precedential summary orders, which do not undertake an analysis of robbery in New York pursuant to the Supreme Court's definition of 'force' in Johnson I.").

In short, the law interpreting Johnson I, the ACCA, and New York robbery statutes is chaotic and inconsistent. Nonetheless, even in the face of contradictory persuasive authority, this court must follow the Supreme Court's decision in Johnson I and the Fourth Circuit Court of Appeals' decision in Winston. These decisions, in conjunction with the decisions of New York state courts, e.g., Bennett, 219 A.D.2d at 570 (holding that forcible stealing under New York's robbery statute need not involve physical contact), compel the conclusion that "forcible steal[ing]" under N.Y. Penal Code § 160.00 is not categorically a violent felony.

## D.

A final issue remains. As discussed supra, New York's first degree robbery statute, N.Y. Penal Code § 160.15, incorporates § 160.00's general requirement of forcible stealing, which by itself does not establish that robbery is a violent felony. However, § 160.15 lists four aggravating factors, the least culpable of which requires that the defendant "is armed with a deadly weapon."[9] N.Y. Penal Code § 160.15(2). The question remains whether "forcible steal[ing]" while "armed with a deadly weapon" rises to Johnson I violent force.

The court concludes that it does not. In Johnson I, the court held

> We think it clear that in the context of a statutory definition of "*violent* felony," the phrase "physical force" means *violent* force —that is, force capable of causing physical pain or injury to another person. See Flores v. Ashcroft, 350 F.3d 666, 672 (C.A.7 2003) (Easterbrook, J.). Even by itself, the word

---

[9] This factor is dispositive under the categorical approach, because the court must presume that the conviction rested upon the "least culpable proscribed conduct." United States v. King, 673 F.3d 274, 278 (4th Cir. 2012); Moncrieffe, 133 S. Ct. at 1680; supra p. 10.

15

> "violent" in § 924(e)(2)(B) connotes a substantial degree of force. Webster's Second 2846 (defining "violent" as "[m]oving, acting, or characterized, by physical force, esp. by extreme and sudden or by unjust or improper force; furious; severe; vehement . . ."); 19 Oxford English Dictionary 656 (2d ed.1989) ("[c]haracterized by the exertion of great physical force or strength"); Black's 1706 ("[o]f, relating to, or characterized by strong physical force"). When the adjective "violent" is attached to the noun "felony," its connotation of strong physical force is even clearer.

559 U.S. at 140. This articulation of "physical force" turns on the nature and degree of the force employed by the defendant, not any attendant circumstances that may accompany that force. Where a criminal defendant applies less than Johnson I level force to a victim, the character of that force does not change merely because the defendant has a deadly weapon that he never brandishes, uses, or threatens to use. See People v. Pena, 50 N.Y.2d 400, 407 n.2 (N.Y. 1980). The same, sub-Johnson I conduct may be more culpable when accompanied by an unseen, unused deadly weapon, and certainly entails a greater risk of eventual violence. However, absent realization of that risk, the force employed is unchanged. While the possession of a weapon in such a situation suffices to impose liability under N.Y. Penal Code § 160.15(2), it does not establish a violent felony under 18 U.S.C. § 924(e)(2)(b).

## IV.

Following the holding in Johnson I, Batista's five convictions for New York first degree robbery are not violent felonies within the meaning of the ACCA. Because Welch declared Johnson II retroactively applicable to cases on collateral review, Batista has the procedural means to attack his ACCA conviction, even at this late date. See Winston, 850

F.3d at 681–82.[10] Accordingly, Batista's § 2255 motion (ECF No. 92) is **GRANTED**, and the government's motion to dismiss (ECF No. 101) **DENIED**.

An appropriate Order will be entered setting the case down for resentencing.[11]

Entered: 06/30/2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[10] Batista was sentenced concurrently on Count 5, which implicates the ACCA, and Count 1, which was a conspiracy to distribute heroin charge that did not involve enhancement under § 924(e). Nonetheless, the court, exercising its "broad and flexible" powers under § 2255, will utilize "the most 'appropriate' remedy" and conduct resentencing on both counts. United States v. Hillary, 106 F.3d 1170, 1171–72 (4th Cir. 1997); see United States v. Davis, 112 F.3d 118, 120–23 (3d Cir. 1997) ("Based on the facts of this case, in which the petitioner collaterally attacks only one of his multiple convictions, which are interdependent for sentencing purposes, we find that the district court did not err in asserting jurisdiction to recalculate the aggregate sentence.").

[11] In order to facilitate resentencing, the United States Probation Office is directed to prepare an updated PSR.